May it please the Court, my name is Kinsey Rakes, and I represent the appellant, Renee McCray. The District Court incorrectly dismissed three of Ms. McCray's claims. First, the District Court incorrectly decided that the white firm is not a debt collector as defined by the FDCPA. Second, the District Court incorrectly concluded that Ms. McCray had not alleged that her mortgage was transferred to Wells Fargo. And finally, the District Court incorrectly dismissed Ms. McCray's TILA claim against Freddie Mac as untimely. With respect to the white firm, it is a debt collector under the statute and this firm's decision in Wilson v. Draper v. Goldberg. To determine if a person is a debt collector, one must first consider whether they satisfy the general definition of debt collector and then if any of the exceptions apply. A debt collector is defined as any person who uses an instrumentality of interstate commerce or the mails in any business, the principal purpose of which is the collection of any debt or who regularly collects or attempts to collect directly or indirectly debts owed or due or asserted to be owed or due another. In Ms. McCray's complaint, she alleged that she received a letter from the white firm on October 4, 2012 stating that it was an attempt to collect a debt. She alleged that the white firm was not the owner of the loan in question and she alleged that the white firm is a debt collection law firm, meaning that they It doesn't take much under statute to satisfy this. And I know you've given us all these facts, all of which are in the briefs in there. But I think all you need to do is state just what this is and then satisfy or at least indicate how does it satisfy this attempt to collect a debt. In other words, if the law firm sends out a notice that says I'm a debt collection firm collecting a debt and you receive this notice of attempt, a foreclosure of the statement, why wouldn't that satisfy a debt collecting attempt? I'm not sure that I understand your question. Is your question that It's a pretty simple proposition here in regard to this particular issue. The others are a little bit more complicated. But this one here seems to be rather straightforward. So just give me the straightforward path to this. That they sent her a notice of intent to foreclose, they were attempting It wasn't an attempt to collect a debt. So does it satisfy the Federal Debt Collection Act? Yes. They were trying to collect a debt from her and that satisfies the definition of And that's the issue you have here. The trial court made a determination. And the only issue here is whether this is a debt collection. Yes, they were attempting to collect a debt because based on this court's holding in Wilson, when a law firm institutes foreclosure proceedings on a property, that is an attempt to collect a debt. And this firm instituted foreclosure proceedings and therefore were attempting to collect a debt. Do we need to go that far? I mean, do we need to say every foreclosure proceeding was a debt collection? I mean, that's Sixth Circuit. But do we have to go that far for your case? No, I don't think that you have to go that far. But I think that that would be in line with what this court said in Wilson when looking at the actions by that law firm. Well, it's got a little more of a complex twist to it. But I don't think it comes out any different. But the argument is that the foreclosure action is independent of a demand for payment. And debt collection has been construed by a couple of district courts in the Northern District of Virginia as requiring a demand for payment. And they say they didn't demand payment. They were conducting a foreclosure on the security interest. The answer, though, is, first of all, not only Wilson v. Draper, but you didn't cite the cases, but we had Syed, Judge Wilkinson's decision, and my decision in Powell v. Palisades where we said that is not that narrow. It's any effort or attempt to collect a debt and any step taken toward it. And foreclosure is a step toward collecting the debt. In Syed, it was a motion for summary judgment that district court said was not debt collection. And we said that it was. And in Powell, it was the assignment to the trustee in order to take the step to collect. The district court said that's not debt collection. We said it was. Because it's a step in furtherance of collecting the debt. Correct. And as Judge Wynn pointed out, the statute's broad. It says any debt, collection of debt or attempt to collect a debt, it's debt collection activity by a person who's not the holder of the debt. And the law firm is doing it to collect the debt for the company. And your argument is that's debt collection. Correct. And they do make the argument, as you noted, that you don't really need a hand to that. Okay. That's kind of the end of that argument unless you've got something to add to it. I'm just following what's going along, and I'm right in line with it. Maybe the other side has a point on it, but it seems to me that issue is pretty strong. Yes, I would. I don't know. Sometimes you can keep arguing, and maybe you'll give me something else to think about. I think your case, go ahead. If there are no further questions on that issue, then I can move on to other issues. Okay. With respect to the TILA claim against Wells Fargo, the district court concluded that Ms. McRae had not alleged that her mortgage loan was transferred to Wells Fargo, meaning that there was no obligation for Wells Fargo to When was that obligation created? That obligation was created in May 2009 when TILA was amended in response to the financial crisis to require a bank acquiring a loan to notify the debtor. And when was this loan transferred? 2005? I do not know. I believe this one is alleged, but I am unaware of anything. Why would it apply at all? Ms. McRae alleged that she has evidence that the deed of trust was transferred in 2012, and in her complaint, I believe it's in paragraph 25 of the second amended complaint, she said that her note was allegedly sold to Wells Fargo, but she has never been provided with any evidence of that. She also alleged that her note was sold to Freddie Mac, and she had never been provided with any evidence of that. And because there is no evidence in the record when the note itself was transferred, while it is not binding on this court, a bankruptcy court in the middle district of Pennsylvania considered a similar issue when the deed of trust has clearly been transferred and there is no evidence in the record to reflect when the mortgage note was actually transferred, that is sufficient to state a claim under section 1641G. Did you allege when this assignment occurred? She did not allege when the assignment occurred. Did you allege that it occurred after the effective date of the truth in lending? No, she did not. Was it fatal? No, I do not believe so, because the complaint contains allegations of when the deed of trust was transferred, and that is the only date we have, and there is no evidence as to when the promissory note was actually transferred. What happens when you transfer a deed of trust but not the note? The deed of trust has promises to pay the note, it's parallel to it, and it's basically security for repayment of the note. Don't they both go together? One would think that they go together, but they do not, and this is... Well, I know they're separate documents, but we don't have the documentation on that, do we? We do not have the documentation on that. That is actually one of what I would consider... The statute isn't... You're asking me like you're almost looking for the minute technicalities of... What are you after in this case? It seems to me that if you haven't been treated fairly in the collection of a debt, misrepresentations or whatever, you can pursue that, but truth in lending, obligations that didn't exist when the loan was made to her, and transferred, pretty... It's a big reach. So to the extent your question goes to a remedy as to what she's seeking... Well, I know what she's seeking. She's seeking statutory damages, but that... Correct. You've got to show your claim. Correct, you do, and because the TILA Act was amended in 2009, the only specific date that we have in the record is when the deed of trust was transferred in 2012, and the fact that she alleged that the note was also transferred, it seems logical to assume that the note goes with the deed of trust, absent any other evidence, and therefore the district court should have concluded that she alleged that her loan was transferred to Wells Fargo, triggering their obligation to notify her of that transfer. Your client is a relatively inconsistent... although she did a pretty good job representing herself, per se, but she's still a relatively financially unsophisticated consumer, and she's put in the position of having to allege a TILA claim, and yet the purpose of the TILA notice is to notify the consumer when a transaction has occurred. Isn't it the case that by the nature of the violation itself, it puts her at a disadvantage to know that the violation has occurred? Yes, I would agree with that statement. It is very difficult if the consumer is not notified of the transfer to know if or when that happened, or even how to prove it, because she never... Or who it was transferred to. Correct, because she was never provided with notice or any documentation of the transfer. Finally, with respect to the TILA claim against Freddie Mac, the district court concluded that it was untimely filed. While the court could have reached this conclusion under a summary judgment standard, it was incorrect to dismiss the claim under this standard. This court can review the dismissal of that claim under the summary judgment standard because the defendants titled their motion a motion to dismiss or in the alternative, a motion for summary judgment. Ms. McRae did not oppose that motion in a traditional way that a lawyer would. However, she did file a motion for reconsideration, which was not allowed by the district court, which is the first time that she raised the issue of issues not being ripe until further discovery was permitted. But if the court does review that claim under the summary judgment standard, then there is evidence in the record that she was notified of Freddie Mac's involvement with her loan in some way in October 2012, and her claim would be untimely under a summary judgment standard. The district court dismissed this TILA claim, and here and again, when I look at this, it's been a long time. I've been a judge 26 years since I did real estate law. I just don't understand why you would take a deed of trust without a note, but I don't need to understand that. Wells Fargo makes too much money for me to have to understand that. But it dismissed this TILA claim on the grounds that no notice of assignment is required under TILA where only the beneficial interests, not the legal title of a note, is transferred. And so a deed of trust is simply a deed of the trust that's held with the underlying note here, and there's no legal title that passes, an equitable title that goes. And so was the district court correct in saying in that statement? As I recall the district court's opinion, that related to Wells Fargo. Yes. Okay, so it is correct that under TILA, the obligation to report goes with the promissory note or the debt obligation and not the beneficial interest. It goes with the legal title? Yes, it goes with legal title. And that was not transferred to you? As far as they claim that it was not transferred, there's no evidence really in the record of who owns the note. It is clear that at some point the note was transferred. We do not know when the note was transferred or who the note was transferred to. All right, does the court have? Is that it? Okay, thank you. We'll hear first from Mr. Hillman. Thank you, Your Honors. Initially, let me say that I represent Samuel I. White and the individual substitute trustees, and I'll answer those questions. Mr. Barranco, co-counsel, will answer the questions as they are relative to Freddie Mac and Wells Fargo. You represent the law firm? I represent the law firm, Your Honor. This acronym that I keep seeing popping up for the law firm, is that a common acronym they use or is it just something they use for these opinions here? S-I-W-P-C. S-I-W-P-C. Samuel I. White, PC. Samuel I. White, PC. Is that what they go by? Samuel I. White, PC. No, that's the name of the law firm, Your Honor. Okay, all right. May it please the Court, Your Honors. My name is Robert Hillman. I represent Samuel I. White, PC, and the individual substitute trustees. The appellant has failed to meet her statutory threshold burden to demonstrate these appellees are qualified as debt collectors necessary to trigger liability. Indeed, the various labels that she utilized and conclusions asserting such qualifications were insufficient and devoid of any facts to allow the district court to derive any inferences of plausibility that these appellees were debt collectors. In essence, I think your question centered around three distinct questions. And first, Judge Niemeyer, I think that your recent opinion in the Henson v. Santander is somewhat dispositive of the issues that are before this Court today because in that you looked at the analysis of what needs to, how we do the analysis to determine after we find a consumer debt. That's the definition of debt collector. You need to probably answer more precisely why initiating a foreclosure proceeding is not a step in collecting the debt. There is no express demand for payment undertaken in foreclosing. That's what I thought your argument was. And if you read Powell, which we issued, we said that that was not necessary. It isn't necessary. Under Draper, it was necessary. And we've moved away from that closer towards the Sixth Circuit's decision in Glaser that mortgage foreclosure is per se a debt collection. But, again, what we are undertaking in a foreclosure proceeding is merely to foreclose the right of redemption. For what purpose? The ultimate purpose is to collect the debt. No. You're trying to sell the house in order to get the money and pay the lender. No, it's not that the substitute trustee is undertaking the payment. They are merely going ahead and divesting those individuals that are subordinate interest holders of the right and interest in the property and what the secured party does with the property subsequently. What are you doing? That doesn't make sense. You're hired to collect this debt and to foreclose. You file a demand letter, pay up, you're in default. They don't pay up. You go to foreclosure. You sell the house at foreclosure, collect the money and turn it over to your client. If there's excess, you turn it over to the borrower. We act as a? Debt collector. No, we act as an escrow agent in that regard. I beg to differ with the Court in that regard. Clearly, in the case before you, when you take a look and you look at whether or not we are deemed a debt collector, you have to see whether or not we go through the individual categories, whether it's our primary purpose is the collection of debts, plural, or whether or not our regular activity is the collection of debts of another. There is no proof in the complaint that we are either. I thought they alleged it. The Court dismissed it. The Court dismissed it because they failed to allege it. The Court dismissed it because there was no demand for payment and relying on that Virginia case, and we have overruled that, and we've had that argued before us before, and Judge Wilkinson and Syed had the same arguments made before him, and the statute is broad. It says debt collection activity. The statute? Or attempt to collect the debt. You're not out there trying to write the Star Spangled Banner or something. When you're sitting there collecting, your client is trying to collect the debt from a person in default, and you're foreclosing on the security interest. But we never make the demand for the payment of money. It's not required in the statute. No. And, Judge Winn, your question, if I may address Judge Winn's question, the initial question was you had this notice of intent to foreclose. That's a statutory form that is put out and dictated in format by Real Property Article 7105.1c in the State of Maryland. That form does three things. It advises a party that they have been in default for 90 days and that a foreclosure proceeding could be docketed within 45 days from the date of that notice. It provides them with information that, and it says it's not a demand for payment. It says it's information provided so that they can get representation. Now, look, in Powell we had the very same argument made. There was no demand for payment. There was an assignment made in preparation for a collection effort. They assigned the property to the trustees, and the argument was there was no demand for payment. We said, first of all, we said there's nothing in the statute as part of the express demand for payment or even as part of an action designed to induce the debtor to pay. Rather, to be actionable under these provisions of the FDCPA, a debt collector need only have used a prohibited practice in connection with the collection of any debt or in an attempt to collect any debt, a standard significantly broader than that employed by the district court. That is assuming that we are a debt collector and there is no proof that we met the That isn't what the district court decided. The district court decided you didn't make demand for payment. No, the district court did if you look at the footnote at 350. What did the court say? What the court's indulgence. The court said in the footnote, Beloshi serves to only show that McRae did not sufficiently allege facts in her complaint to establish that SIWPC defendants as debt collectors. There were no facts. Look at the complaint. Paragraph number nine of the complaint is the only delineation in the entire complaint that makes any reference to the debt collection activities. They are foreign. She has received a foreclosure notice letter from SIWPC that says it's a debt collection law firm. And with a clear statement, this is an attempt to collect a debt. Your Honor, if I may, that letter, the notice of intent, and I see I'm going into Mr. Barranco's time. May I answer that question without going into his time? Well, you can answer it. I don't know what you're going to do about the time. Go ahead. That issue is point blank that that language is included in there because this form goes out as dictated and mandated under the rules in the State of Maryland for foreclosures that it has to go out no earlier than 45 days before you docket the foreclosure. It has to be included in the order to docket. It tells the party that they have a right to seek loss mitigation. In exchange for loss mitigation as an alternative to foreclosure, you're advising the party that information which they may provide as a result of that loss mitigation could be used against them. Basically, the letter is not telling what really is the fact. You're not a debt collection law firm? We're not. You're not attempting to collect a debt? We are not. It never says it. But we have to include it for this reason. If down the road it's determined that the law firm becomes a debt collector and the debt collection becomes central to the foreclosure proceeding, which it is not. A complaint would take a complaint to be true on its face, and she said this, whether it's what you meant to say or what you are, she alleged that. She said you're a debt collection law firm, and you made an attempt to collect a debt. That's what your letter said. But that language in Belogie the court found was not indicative. And if you don't include it and you're later found to be a debt collection law firm, the end result is that you then violated another statute. So it's almost a damned if you do and a damned if you don't situation. Are you arguing that the white firm does not regularly collect debts on behalf of somebody else? There is no evidence in the record. I'm asking you, is that what you're asserting? Is that the point you're making under 1692A6? That's the definition of debt collector. That regularly collects debts of another. Yes, I am suggesting. You're saying the white firm doesn't regularly collect debts on behalf of another. That is correct. Despite the fact that's what they said in the letter. That letter says. Does it say that? Does it say they're a debt collector? It uses the mini Miranda phrase. Because if you don't use that phrase in there. It's not a question of what you use. The question is what you're telling the other person and what they're alleging. And I'd be surprised if you could factually make the statement that the white firm doesn't regularly collect debt on behalf of others. If they were a debt collector, which was not established in the complaint. If I may, I'm going to defer to Mr. Barranco. Thank you. May it please the Court. Michael Barranco on behalf of the Appalese Federal Home Loan Mortgage Corporation, which I will refer to as Freddie Mac and Wells Fargo Bank, N.A. As the Court is aware, the issue presented on this appeal as to my client is whether the District Court should have dismissed the claim brought under the Truth in Lending Act, specifically 15 U.S.C. 1641G, which requires that notice be given if a mortgage is, if the ownership of the mortgage loan is sold, assigned, or transferred. And the issue came up as to when that law was enacted, and it was enacted in 2009. Well, it came up because you say that she failed to allege that a loan was assigned or transferred to Freddie Mac in violation of the Truth in Lending Act, and yet she says four times in a complaint Freddie Mac is the owner of the loan. So how can you become the owner of a loan if the original owner never transferred it? Well, you become the owner prior to enactment of the TILA statute. So that is your argument. That's the significance of the date. That's what my question was. Yes, Your Honor. And you're saying that's what happened here. Yes, Your Honor. And, in fact, the District Court, in dismissing the claim as to Freddie Mac, found that nowhere in the complaint or any of the subsequent pleadings filed by Ms. McRae did she ever allege any sale, transfer, or assignment of the loan to Freddie Mac after Congress had enacted TILA in 2009. And, in fact, really the main thrust, if not the exclusive thrust, of her complaint was always the assignment that she relied upon in all three of her amended complaints, including her second amended complaint, was the July 3, 2012, corporate assignment of deed of trust to Wells Fargo, not to Freddie Mac, and that was from MERS. And I'll get to that in a moment. But at no time did she ever allege any transfer to Freddie Mac subsequent to the enactment of that section of TILA. Now, how was she supposed to know that, though? Well, there's no requirement prior to 2009 that she be notified of the change in ownership. She would have been notified of the change if there was a change in servicing to Wells Fargo. But how would she know? She has no idea when this was transferred or who it was transferred to. So how could she possibly know? Well, that's not actually she was notified when she wrote to Wells Fargo in June of 2011, and then Wells Fargo eventually responded in October. There's a series of letters that are part of the record in October. There's a letter in November and December, all of which she admits in an affidavit of truth filed by her that Wells Fargo, as the servicer, she wrote to Wells Fargo with a qualified written request. She said, I want information about my loan, and Wells Fargo responded that her loan, that the owner of her loan was Freddie Mac and that Freddie Mac would probably insist that she deal with the servicer. Is that all in the complaint? It's in her affidavit of truth that she. I'm not sure what affidavit of truth means. I assume it's all affidavits of truth. I don't either, Your Honor. But what happened was our motions were submitted as motions to dismiss her or in the alternative motions for summary judgment. She opposed the motions as if they were both motions to dismiss in summary judgment. She submitted after. The district court ruled on them as 12B6 motions. Well, what they complain of here, though, is that the district court de facto treated it as summary judgment, and the district court would have been entitled to treat it as summary judgment in light of the way that Ms. McRae responded to the motions and in light of the evidence before it. But that's not what the district court actually did, right? Well, the district court said that it need not convert it to summary judgment, and the district court relied on an October 2011 letter that Wells Fargo submitted. But let me make a point about that, and that is that when the district court looked at the October 2011 letter, the district court was looking at that to see if, in fact, it could resurrect a claim on behalf of Ms. McRae that she didn't otherwise plead, because nowhere in her complaint did she allege any transfer subsequent to the enactment of that section of TILA. So the district court, after we submitted that letter, went looking to say, well, does this October 2011 letter in any way resurrect her claim? And the district court properly found, no, it doesn't, because it would be barred by the one-year statute of limitations in TILA, because she was notified in October of 2011 of Freddie Mac's involvement, but she didn't sue until I think it was May of 2013. So she was on notice, and McRae concedes in her brief that when a borrower is on notice of a possible transfer, then there's an obligation to sue. Within the one year, she was notified by Wells Fargo of the involvement of Freddie Mac. The district court's ruling with regard to Wells Fargo was on the substance of the TILA claim, but if, for example, we were to find that the district court was wrong with that and send it back, she's got a time problem on Wells Fargo, too, does she not? Absolutely, because Wells Fargo had been the servicer going back, I believe, to 2005, but even if that's not in the record, she wrote to Wells Fargo as the servicer in June of 2011. She knew that Wells Fargo was the servicer. That's in the complaint. That's in the complaint. She always knew that she was dealing with Wells Fargo. There's no issue as to, gee, I didn't know that I had to deal with Wells Fargo. She had always been dealing with Wells Fargo, so there is a timeliness issue. And, again, the main thrust of her complaint was that the corporate assignment deed of trust was a violation, but numerous courts have held that an assignment of a deed of trust, in particular from MERS, does not implicate that section of the TILA because that assignment is not assigning ownership of the loan. All it is is it's assigning MERS's interest or beneficial interest in the deed of trust and not ownership of the loan itself. What is MERS's beneficial interest in the deed of trust? What was their interest? MERS's interest, as you know, there's been plenty of case law with respect to MERS's role in this, and MERS basically holds the deed of trust so that as the note and the ownership of the loan is transferred, there's no need to necessarily transfer or to record assignments of the deed of trust in land records. And what happened here, the reason that a deed of trust was, I'm sorry, an assignment of the deed of trust was eventually recorded, the one that Ms. McRae complains of, is because if you look at it itself, it says default assignment, and what MERS does is it holds the deed of trust essentially until typically when there's a default and the property is headed to foreclosure. It will then do a default assignment back to either the owner of the loan or, in this case, the servicing agent of the loan, which was Wells Fargo. I see my time's up. Okay. All right, Ms. Rakes, do you have some rebuttal? I would just like to address one point because I think that this panel has a very comprehensive understanding, which would be to your question about timeliness. The deed of trust with Wells Fargo or the deed of trust was assigned to Wells Fargo on July 3, 2012, so her May 23, 2013 claim would be within one year of that filing or of the transfer of the deed of trust, and the fact that she had previously been dealing with them as a servicer would not affect their obligation to notify her if, in fact, they had purchased the loan under Section 1641G. Did the district court address whether the white firm regularly collected debts on behalf of others? I find the district court's opinion confusing. It's unclear to me as to whether or not they addressed whether they regularly collect debts or if they simply were not attempting to collect a debt. And what did you allege in that regard in the complaint? With respect to them being debt collectors, Ms. McRae alleged in the complaint that they were a debt collection law firm. She received a letter from them stating that it was an attempt to collect a debt and that the debt was owned by someone other than the white firm. And what is the record in the case? Are we supposed to look at the documents that are in the JA, or do we look just at the complaint on this case? With respect to the white firm, their motion was only a motion to dismiss. You only look at the complaint and documents integral to the complaint.  It would be the complaint and any document that Ms. McRae specifically referenced or relied on in her complaint. Did she refer or rely on the letter from the white firm? Yes, she did. The panel has no further questions. All right, thank you. We'll come down, we'll adjourn court and then come down to Greek Council.
judges: Paul V. Niemeyer, James A. Wynn Jr., Thomas E. Johnston